# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| | | |
|---|---|---|
| United States of America<br>v.<br>MELVIN HINSON | )<br>)<br>)<br>)<br>)<br>) | Case No. 3:15mj94 |
| Defendant(s) | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 1-19, 2014__ in the county of __Westmoreland__ in the __Eastern__ District of __Virginia__, the defendant(s) violated:

*Code Section*            *Offense Description*

Title 18, United States Code, Section 922(k), to wit, MELVIN HINSON did knowingly and unlawfully possess firearms which had the manufacturers' serial numbers removed, obliterated and altered and which had been shipped and transported in interstate commerce.

This criminal complaint is based on these facts:
See attached Affidavit, incorporated by reference herein.

☑ Continued on the attached sheet.

                                                 _____
                                                 *Complainant's signature*

                                                 Michael A. Liptak, Special Agent, ATF
                                                 *Printed name and title*

Sworn to before me and signed in my presence.
                                                 /S/
                                                 David J. Novak
Date: April 13, 2015       United States Magistrate Judge
                                                 *Judge's signature*

City and state:     Richmond, Virginia        David J. Novak, United States Magistrate Judge
                                                                          *Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

1. I am a Special Agent employed by the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed for 13 years. In 2002, I completed basic criminal investigation training and ATF New Agent Training, both at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. During my career I have conducted and participated in ATF investigations concerning firearms trafficking, unlawful possession of firearms and explosives, narcotics trafficking, arson and contraband cigarette trafficking. I have been assigned to the Richmond, Virginia Group 1 Field Office since 2001. I have participated in and have knowledge of the execution of many search warrants and investigations of Federal firearms violations. As a result of my training and experience as an ATF Special Agent, I am familiar with Federal criminal laws and know that it is a violation of Title 18 USC Section 922(k) for any person to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and which has, at any time, been shipped or transported in interstate or foreign commerce.

2. This affidavit is submitted in support of a criminal complaint charging MELVIN HINSON with possession of firearms with obliterated serial numbers in violation of 18 U.S.C. § 922(k).

3. The information in this affidavit is the result of a joint investigation conducted between the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Virginia State Police ("VSP"), Colonial Beach Police Department ("CBPD") and Westmoreland County Sheriff's Office ("WCSO"). All information contained in this affidavit is either based upon my personal knowledge and observations, the personal knowledge and observations of

other sworn law enforcement officers participating in this investigation, and the personal knowledge and observations of reliable cooperating individuals ("CI1" and "CI2"). The information contained in this affidavit is submitted only to support probable cause for the issuance of search warrants and may not contain all information known to the government.

4. In March 2014, ATF Special Agent John Healey spoke to an individual, herein referred to as "CI1," who stated that CI1's friend had three firearms with the serial numbers removed. CI1 knew this was illegal and contacted Agent Healey. CI1 knew Agent Healey because CI1 had been the victim of a crime investigated in part by Agent Healey. CI1 was formerly a federally licensed firearms dealer. CI1 has known this friend for several years and CI1's friend and others knew CI1 was familiar with firearms.

5. According to CI1, his friend received the firearms from CI2, who traded the firearms for auto parts. CI1's friend told CI1 that he later noticed that the manufacturer's serial numbers had been removed and asked CI1 what he should do with them. CI1 told CI1's friend to give the firearms back to CI2. CI1's friend asked CI1 to take the firearms and clean them good so that when he gave the firearms back to CI2, his fingerprints would not be on them. CI1's friend told CI1 that CI2 said the firearms came from a Westmoreland County Deputy named Melvin HINSON. CI1 agreed to take the firearms and clean them. However, prior to taking possession of the firearms, CI1 called Agent Healey. Per Agent Healey's instructions, CI1 took possession of the firearms on or about March 19, 2014 and held them until they could be transferred to ATF's custody.

6. Subsequently, CI1 turned over the following firearms to ATF's custody: 1) a Rohm 38 Special caliber revolver, model RG38, with an obliterated serial number; 2) a

Harrington and Richardson (H&R) 32 caliber revolver, model 732, with an obliterated serial number; and 3) a Jimenez Arms 9mm caliber semi-automatic pistol, model J.A. Nine, with an obliterated serial number.

7. Your affiant examined the three firearms recovered from CI1 and noticed that two of the firearms appeared to have been inscribed with handwritten numbers similar to the numbers forensic laboratories place on items of evidence. On the Jimenez Arms 9mm pistol, there was what appeared to be a Virginia Department of Forensic Science ("DFS") FS Lab #C09-15999 inscribed into the magazine and also into the magazine well (inside the grip). DFS later confirmed that this firearm had previously been submitted in 2009 by the Colonial Beach Police Department, Colonial Beach, Virginia. On the Harrington and Richardson (H&R) 32 caliber revolver, it appeared that a partial number (9950) was inscribed into the top portion of the backstrap of the frame. This also appeared to be a possible lab number from DFS. DFS later confirmed that this firearm had previously been submitted by the Westmoreland County Sheriff's Office (Virginia) in 2011 with FS Lab #C11-9950. None of these firearms were manufactured in the Commonwealth of Virginia and, therefore, each of them traveled in interstate commerce prior to entering the Commonwealth of Virginia.

8. According to CI1, in June 2014, CI1's friend told CI1 that CI2 had approached him again and gave him a Kel-Tec rifle and asked him to sell it for CI2. CI1 went to the Napa Auto Parts store and looked at the rifle and noted that the serial number had been removed. CI1 described the rifle as a Kel-Tec carbine style assault rifle, chrome in color with a folding metal stock. At that time, CI2 also was at the Napa store. CI1 asked CI2 if CI1 could take the rifle

home and shoot it to make sure it was accurate. CI2 declined, but told CI1 that the Kel-Tec came from Melvin HINSON and that CI2 could get more guns from HINSON to sell.

9.   On August 14, 2014, at the direction of law enforcement, CI1 called CI2, who stated that he had a .22 caliber handgun and a Kel Tec 9mm rifle, both with obliterated serial numbers that he was willing to sell.

10.   On September 12, 2014, CI1 purchased the .22 caliber handgun, from his friend, to whom CI2 had delivered the firearm for CI1. The firearm was a High Standard .22 caliber revolver, model Sentinel, with an obliterated serial number.

11.   On September 26, 2014, CI1 purchased the KelTec 9mm rifle from his friend, to whom CI2 had delivered the firearm for CI1. The firearm was a KelTec 9mm semi-automatic rifle, model Sub 2000 with an obliterated serial number, a folding stock, and an empty ammunition magazine inserted in the magazine well. Also in the blue bag was a box of 50 rounds of Wolf brand 9mm Luger ammunition.

12.   On December 5, 2014, CI1 had a long telephone conversation with CI2, in which CI2 told CI1 that he had many more firearms that he wanted CI1 to get rid of for him. CI2 said that some of the firearms were coming from law enforcement agencies to include Westmoreland County, Virginia and Saint Mary's County, Maryland. CI2 stated that these firearms also had obliterated serial numbers.

13.   On January 9, 2015, CI1 was approached by CI2, who provided four handguns to CI1, two of which had obliterated serial numbers. The firearms were: 1) a Taurus 22 caliber semi-automatic pistol, model PT22, bearing serial number 91101380; 2) a Jennings 22 caliber semi-automatic pistol, model J22, bearing serial number 560307; 3) a General Precision Corp 22

caliber revolver, model 20, with an obliterated serial number; and 4) an RG Industries 22 caliber revolver, model RG23, with an obliterated serial number.

14. On January 15, 2015, at the direction of law enforcement CI1 purchased two firearms from CI2. They were a Remington 12 gauge slide action shotgun, model 31, bearing serial number 78307 and a Lee-Enfield British .303 caliber bolt action rifle, model MK1, bearing serial number 24521.

15. On January 22, 2015, at the direction of law enforcement, CI1 purchased four firearms from CI2. They were: 1) a New England Firearms 12 gauge single shot shotgun, model Pardner, with an obliterated serial number; 2) a Mossberg 12 gauge slide action shotgun, model 500A, with an obliterated serial number; 3) a Maverick Arms 12 gauge slide action shotgun, model 88, with an obliterated serial number; and 4) a Mossberg 12 gauge slide action shotgun, model 500A, with an obliterated serial number.

16. During my examination of these four firearms, I observed what appeared to be a possible forensic lab number on the inside of the receiver just inside the loading port of the Maverick Arms shotgun. This inscription had been scratched off partially and painted over. Also, during the examination of one of the Mossberg shotguns, your affiant observed what appeared to be a DFS forensic lab number "C113581WMG" inscribed on the inside of the receiver just inside the loading port. DFS confirmed that the shotgun with the inscription "C113581WMG" was previously submitted to their office by Westmoreland County Sheriff's Office in 2011 and that the firearm is described, according to the DFS Certificate of Analysis as a Mossberg 12 gauge slide action shotgun, model 500A, serial number J501502.

17. On February 11, 2015, law enforcement approached CI2 about the sale of firearms with obliterated serial numbers. CI2 turned over five firearms to law enforcement, one of which was a short-barreled shotgun, and four with the serial numbers intact. The four firearms with serial numbers were CI2's personal firearms. CI2 admitted that the short-barreled shotgun was supplied, in its current state, by Melvin HINSON. CI2 admitted that CI2 had obtained numerous firearms from HINSON, and that the serial numbers had already been obliterated when CI2 received them. According to CI2, HINSON is a retired Westmoreland County Sheriff's Deputy, who lives with his girlfriend at 5173 Sandy Point Road, Kinsale, Virginia. HINSON told CI2 that HINSON receives firearms from law enforcement agencies for the purpose of destroying the firearms for the law enforcement agencies. However, rather than destroy the firearms as required, HINSON was removing the serial numbers and selling or trading the firearms.

18. According to CI2, typically, HINSON would deliver the firearms to CI2 in a silver Chevrolet pickup truck. However, prior to receiving the first batch of firearms in approximately March, 2014, CI2 went to HINSON's residence, located in Westmoreland County, Virginia, to view the firearms. On this first occasion, HINSON and CI2 went first to the in-law apartment on the property, which was filled with items and clutter and appeared to be used for storage. HINSON retrieved a bag from the guest house and took it to the detached garage, where HINSON has a workshop. HINSON removed several firearms from the bag. Several of the firearms still had their serial numbers, but several did not. HINSON told CI2 that he would remove the rest of the serial numbers and then trade the firearms to CI2. CI2 left HINSON's residence that day without taking any of the firearms. Subsequently, CI2 returned to

HINSON's residence and went to HINSON's detached garage, where CI2 picked up firearms from HINSON with obliterated serial numbers.

19. Based on the foregoing, there is probable cause to believe that from on or about March 1, 2014, and continuing through March 19, 2014, in the Eastern District of Virginia, MELVIN HINSON did knowingly and unlawfully possess firearms which had the manufacturers' serial numbers removed, obliterated and altered and which had been shipped and transported in interstate commerce.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Michael Liptak
ATF Special Agent

Sworn to and signed before me this 13th day of April, 2015, in Richmond, Virginia

/S/
David J. Novak
United States Magistrate Judge

David J. Novak
United States Magistrate Judge

Reviewed by Olivia L. Norman, AUSA